**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| CX REINSURANCE COMPANY LIMITED, f/k/a CNA REINSURANCE COMPANY LIMITED | * * * |
| Plaintiff, | * |
| v. | Case No.: GJH-18-2355 |
| DEVON S. JOHNSON, | Lead Case |
| Defendant. | |

**MEMORANDUM OPINION**

This case and five additional cases consolidated with it concern the obligation of CX Reinsurance Company Ltd. f/k/a/ CNA Reinsurance Company Ltd. ("CXRe") to indemnify its insureds, non-party Baltimore landlords, for judgments awarded to three individuals ("Judgment Creditors" or "Creditors") in liability suits for injuries caused by lead paint in homes rented from the insured landlords. Pending before the Court is a motion by Judgment Creditors to stay the six actions while Maryland appellate courts consider cases that, according to Creditors, may change the law governing the merits of these actions. ECF No. 34. Also pending is CXRe's motion for leave to file a surreply in opposition to the motion to stay. ECF No. 47. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, the Court will grant the motion for leave to file a surreply and the motion to stay.

## I. BACKGROUND[1]

These cases involve three individuals – Devon S. Johnson, Chauncey Liles, and Shyliyah Streeter – who were born in the 1990s, lived in Baltimore rental housing as young children, and were injured by lead-based paint at their residences. ECF No. 33 ¶¶ 2–4, 10–11, 18–19, 55–56, 65–66, 92–93, 97. In October 2014, each successfully brought suit in the Circuit Court for Baltimore County against their respective landlords for negligence; the two judgments that the landlords appealed were affirmed. *Id.* ¶¶ 20–25, 67–71, 98–99. Each landlord was insured by CXRe for part or all of the time that Creditors lived at the landlords' properties. *Id.* ¶¶ 27, 57, 95. Johnson's landlord was ensured by CXRe in one-year policies that ran from August 1, 1997 to August 1, 1998, August 1, 1998 to August 1, 1999, and August 1, 1999 to August 1, 2000. *Id.* ¶¶ 13–15. Those policies covered the entire period that Johnson lived at the landlord's property, which ran from November 1997 to February 2000. *Id.* ¶ 11.

Liles' landlord was insured by CXRe in one-year policies that ran from February 28, 1997 to February 28, 1998 and from February 28, 1998 to February 28, 1999. *Id.* ¶¶ 59–60. After that, Liles' landlord was insured by a different company, Liberty Mutual Mid-Atlantic Insurance Company ("Liberty Mutual"), then known as Merchants Business Men's Mutual Insurance Company ("M&B"), which is also a party to these consolidated actions. *Id.* ¶ 57. M&B issued one-year policies to Liles' landlord covering the periods February 28, 1999 to February 28, 2000, and February 28, 2000 to February 28, 2001. *Id.* ¶¶ 61–62. However, CXRe reinsured M&B for losses and expenses incurred by M&B under Liles' landlord's M&B policy. *Id.* ¶ 58. Liles lived at the property from February 1998 to approximately 2003. *Id.* ¶ 56.

---

[1] The facts in this section are drawn from the Amended Complaint that Creditors have filed consolidating the allegations in their three individual suits, described further below, ECF No. 33, and from CXRe's Answer, ECF No. 38, which does not dispute the facts recounted here.

Finally, Streeter lived from 1996 to 2001 at a property rented by the same landlord as Liles' property. *Id.* ¶ 93. Before February 28, 1997, the landlord was a named insured under a general liability policy issued by Landmark Insurance Company ("Landmark"). *Id.* ¶ 94. Landmark is a party to these suits but has not appeared. From February 28, 1997 to May 18, 1999, the same policies that insured the property where Liles lived insured the property where Streeter resided. *Id.* ¶ 95. According to CXRe, however, by endorsement effective May 18, 1999, the property where Streeter lived was removed from the list of properties covered by the landlord's CXRe policy in force at that time, and it was not covered under the policy that ran from February 28, 2000 to February 28, 2001. *Id.*

In his suit against his landlord, Johnson was awarded damages of $1,173,000, plus post-judgment interest. *Id.* ¶ 54. CXRe, however, has paid Johnson only $541,384.62 of the principal amount of the judgment. *Id.* ¶ 30. Liles was awarded $1,277,610, but CXRe has only paid $471,732.92. *Id.* ¶ 75. Streeter obtained a judgment by consent of $571,000, of which CXRe has only paid her $59,068.97 of the principal amount. *Id.* ¶ 103. After making the payments, CXRe filed three actions in this Court seeking declarations that it had satisfied its entire obligation to each Judgment Creditor, while Creditors each filed actions in state court asserting that CXRe must pay their entire judgments but had failed to do so. *See* ECF No. 25 at 3–4.[2] CXRe removed those cases to this Court and the six actions were consolidated. *Id.* at 6; ECF No. 26. Creditors filed a consolidated Amended Complaint on June 26, 2019. ECF No. 33.

As the Amended Complaint describes, CXRe maintains that it has satisfied its entire obligation to each Judgment Creditor under Maryland law. *Id.* ¶¶ 29–30, 74–75, 102–104. CXRe asserts that it is obligated to pay only a portion of the judgments against the insured landlords

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

3

based on its (and in the case of Liles and Streeter, M&B's) "time on the risk." *Id.* ¶¶ 34, 77, 106. In other words, CXRe argues that the judgments awarded to each Creditor should be divided across the entire period that the Creditor lived at the lead-contaminated property, and that CXRe is liable only for the portions of that period in which it had a policy in force that covered, and was triggered by, the Creditor's injury. *Id.* ¶¶ 34–36, 75, 77–78, 103–04, 106–07.

Creditors claim in the Amended Complaint that this "time on the risk" method of allocating responsibility and calculating liability for their injuries is contrary to the terms of CXRe's policies with the landlords and Maryland law. *Id.* ¶¶ 37, 79, 108. Creditors argue instead that CXRe is obligated to pay the full amount of their judgments under an "all sums" approach to calculating liability. *Id.* ¶¶ 39, 79, 108. That approach requires CXRe to pay the total amount of their judgments and to seek contribution from any other allegedly responsible party. *Id.* ¶¶ 79, 108. Creditors alternatively argue that even if "time on the risk" is the correct method for allocation, CXRe has misapplied it. *Id.* ¶¶ 40–41, 80–82, 109–12. CXRe defends its calculations on grounds specific to the facts of each case and the relevant policies. *Id.* ¶¶ 35, 80, 109. Judgment Creditors respond that CXRe breached its contracts with the landlords, regardless of whether CXRe's time on the risk decisions were correct, because it should have applied the all sums approach and paid the entirety of the judgments. *Id.* ¶¶ 51–53, 88–90, 119–21.

Creditors' consolidated Amended Complaint was filed on June 26, 2019. ECF No. 33. Before the insurers responded, Creditors submitted a Motion to Stay the consolidated cases on July 8, 2019. ECF No. 34. The motion argues that the same dispute over allocation of insurer responsibility that Creditors raise here is presented in two cases before the Maryland Court of Special Appeals and that this Court should await decisions in those cases and then apply them here. *Id.*; ECF No. 34-1 at 1, 12, 19–23. Before CXRe responded, Creditors in an additional

filing on July 19, 2019 informed the Court that the Maryland Court of Appeals had granted certiorari in a third case, *Rossello v. Zurich American Insurance Company*. ECF No. 35 at 1. Creditors assert that *Rossello* asks the Court of Appeals to decide, for the first time, whether Maryland law requires application of the "all sums" approach or the "pro rata" approach, which applies the "time on the risk" method of determining the extent of indemnification. *Id.* at 2.

On July 22, 2019, Liberty Mutual submitted an Answer to the claims against M&B and a crossclaim against CXRe for any liability that Liberty Mutual may have to Liles or Streeter. ECF No. 36; *id.* at 18–19. CXRe also submitted an Answer on the same day. ECF No. 38. On July 29, 2019, CXRe filed an Opposition to Creditors' Motion to Stay. ECF No. 40. Liberty Mutual filed its own Opposition the same day endorsing CXRe's Opposition. ECF No. 41. Judgment Creditors filed a Reply in support of the Motion to Stay on August 12, 2019. ECF No. 44. On August 13, 2019, CXRe filed an Answer to Liberty Mutual's crossclaim denying the allegations on the ground that CXRe's reinsurance agreement with Liberty Mutual speaks for itself. ECF No. 46. On August 23, CXRe filed a Motion for Leave to file a surreply to Creditors' Reply to CXRe's Opposition to the Motion to Stay. ECF No. 47. Creditors filed an Opposition to the Motion for Leave, ECF No. 48, and CXRe in response filed an additional letter. ECF No. 49.

## II.     STANDARD OF REVIEW

"A court's authority to stay proceedings is incidental to its inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Hunt Valley Presbyterian Church, Inc. v. Baltimore Cty.*, No. CCB-17-3686, 2018 WL 2225089, at *2 (D. Md. May 15, 2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The factors to consider when deciding a motion to stay are: '(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3)

potential prejudice to the nonmoving party.'" *Id.* (quoting *Davis v. Biomet Orthopedics, LLC*, No. JKB-12-3738, 2013 WL 682906, at *1 (D. Md. Feb. 22, 2013)). Courts have also considered the length of the requested stay. *See Stone v. Trump*, 402 F. Supp. 3d 153, 160 (D. Md. 2019) (citing *Donnelly v. Branch Banking & Trust Co.*, 971 F. Supp. 2d 495, 501 (D. Md. 2013)). "[A] district court has discretion to stay actions when proceedings in another matter involve similar issues." *Popoola v. MD-Individual Practice Ass'n, Inc.*, No. Civ.A.DKC 2000–2946, 2001 WL 579774 (D. Md. May 23, 2001) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (2d. ed. 1990)).

"'Surreplies are highly disfavored in this District,' and may only be filed with the Court's permission." *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 722 (D. Md. 2017) (citing *Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015)). "Surreplies, however, 'may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.'" *Id.* (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003)). Allowing a party to file a surreply is within the Court's discretion under Local Rule 105.2(a). *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013).

## III.   DISCUSSION

Judgment Creditors ask the Court to stay these consolidated cases until the Maryland Court of Special Appeals rules in *Robinson v. CX Reinsurance Company Ltd.*, No. 1888 (Sept. Term, 2016) and *Pennsylvania National Mutual Casualty Insurance Co. v. Jeffers*, No. 960 (Sept. Term, 2017), and the Maryland Court of Appeals rules in *Rossello v. Zurich American Insurance Co.*, No. 24 (Sept. Term, 2019). ECF No. 34-1 at 1; ECF No. 35. Though assessing the

pending motion does not require reaching the substantive merits of the litigation, it does necessitate a brief overview of the area of law implicated.

Commercial general liability insurance policies commonly provide coverage for bodily injury and property damage caused by an "occurrence," a term that policies will typically define to include continuous or repeated exposure to a harmful condition. *See Mayor & City Council of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1098–1104 (Md. App. 2002). When bodily injury occurs as a result of a person's continuous exposure to a toxic substance like lead paint or asbestos, the exposure often spans multiple insurance policy periods, and in some cases multiple insurers if the policyholder changes carriers while the exposure continues. *See id.*; *Md. Cas. Co. v. Hanson*, 902 A.2d 152, 168–72 (Md. App. 2006); *see also Gen. Ins. Co. of Am. v. Walter E. Campbell Co., Inc.*, 107 F. Supp. 3d 466, 470 (D. Md. 2015). Two issues are therefore often presented and litigated in cases arising from such exposure: whether the injuries trigger coverage in multiple policy years; and, if so, how to allocate financial responsibility for the injured person's damages if the policyholder changed insurers and multiple insurers' policies are therefore triggered by the injuries. *See Utica Mutual*, 802 A.2d at 1094–1104; *Walter E. Campbell Co.*, 107 F. Supp. 3d at 470.

Courts have applied two different approaches to the allocation issue. Under the "all sums" method, "an insurer whose coverage is triggered is liable for the full amount of the judgment against the policyholder, up to the amount of its policy limit." *Allstate Ins. Co. v. Jam #32 Corp.*, No. ELH-17-3293, 2019 WL 2009359, at *7 (D. Md. May 7, 2019). The competing "pro rata" approach "limits an insurer's liability to 'that period of time it was on the risk compared to the *entire* period during which damages occurred.'" *Id.* (quoting *Utica Mutual*, 802 A.2d at 1104). In 2002, the Maryland Court of Special Appeals in *Mayor & City Council of*

7

*Baltimore v. Utica Mutual Insurance Co.* adopted the pro rata approach for allocating liability among several insurance companies for property damage caused by asbestos-containing insulation in Baltimore public buildings. 802 A.2d at 1075, 1100–04. In 2005, in *Riley v. United Services Automobile Association*, the Court of Special Appeals extended *Utica Mutual* to lead paint exposure injuries spanning multiple policy periods. 871 A.2d 599, 608–12 (Md. App. 2005). The following year, that court in *Maryland Casualty Co. v. Hanson* reaffirmed that the pro rata method, not the all sums method, is the proper approach for allocating liability in lead paint cases. 902 A.2d 152, 168, 172 (Md. App. 2006).

Relying on these cases, the Fourth Circuit in *Pennsylvania National Mutual Casualty Insurance Co. v. Roberts* held that "[i]n lead paint or continuous trigger cases . . . Maryland courts engage in a 'pro rata by time-on-the-risk allocation' of liability." 668 F.3d 106, 113 (4th Cir. 2012) (citing *Hanson*, 902 A.2d at 168). The Fourth Circuit had earlier held in an asbestos case that following *Utica Mutual*, "the pro-rata allocation method is correct under Maryland law." *In re Wallace & Gale Co.*, 385 F.3d 820, 835 (4th Cir. 2004). Various decision by this Court have followed the Fourth Circuit's direction on Maryland law. *See, e.g.*, *Allstate Ins. Co. v. Blue*, No. ADC-18-1199, 2019 WL 266281, at *3 (D. Md. Jan. 18, 2019); *Pa. Nat'l Mut. Cas. Ins. Co. v. Jacob Dackman & Sons, LLC*, No. RDB–16–2640, 2017 WL 4098749, at *3 (D. Md. Sept. 14, 2017). Several decisions have denied certification to the Maryland Court of Appeals of questions about the correctness of the pro rata approach, seeing inadequate grounds to find it likely that Court of Appeals would rule differently than the Court of Special Appeals. *See Allstate Ins. Co. v. Rochkind*, 381 F. Supp. 3d 488, 503–04 (D. Md. 2019); *Allstate Ins. Co. v. N-4 Inc.*, No. ELH-17-2980, 2018 WL 5234885, at *7 (D. Md. Oct. 22, 2018).

Following the guidance of these cases, CXRe has paid Judgment Creditors amounts consistent with its calculations of its "time on the risk" under the pro rata approach. ECF No. 33 ¶¶ 29–30, 34–36, 74–75, 77–78, 102–04, 106–07. Creditors maintain that these payments are insufficient and that CXRe is obligated to pay the entirety of each of their judgments under the all sums approach. *Id.* ¶¶ 39, 79, 108. In their Motion to Stay, Creditors recognize that this position is not consistent with current Maryland law, but ask this Court to await the Court of Special Appeals' decisions in the *Robinson* and *Jeffers* cases in the event that they overrule *Utica Mutual* and depart from the pro rata approach, as sought by the judgment creditors in those cases. ECF No. 34-1 at 12–23.[3] Creditors' July 19, 2019 notice of supplemental authority informs the Court that the petitioner in the *Rossello* case, for which the Maryland Court of Appeals granted certiorari on July 12, asks the Court of Appeals for the first time to determine whether the pro rata approach or the all sums approach is proper. ECF No. 35 at 2. Because the Court of Appeals' decision "will resolve an unsettled question of Maryland law at issue in this consolidated action," Creditors argue that a stay is warranted pending *Rossello*. *Id.*

With respect to the Court of Special Appeals cases, *Robinson* and *Jeffers*, Creditors' arguments fail because, though the parties have not alerted this Court, the Court of Special Appeals has released its decisions in those cases since briefing on this motion concluded. *Robinson v. CX Reinsurance Co. Ltd.*, No. 1888, 2019 WL 5173785 (Md. App. Oct. 15, 2019); *Pa. Nat'l Mut. Cas. Ins. Co. v. Jeffers*, No. 960, 2020 WL 95667 (Md. App. Jan. 8, 2020). In *Robinson*, the Court of Special Appeals rejected the plaintiff's "attack" on "*Utica Mutual* . . . and its progeny" and reaffirmed the pro rata approach for lead paint cases. *Robinson*, 2019 WL 5173785, at *5, *7. It did the same in *Jeffers*, in which it again explained the rationale behind the

---

[3] Creditors have attached to their Motion the briefing in these cases. ECF Nos. 34-2, 34-3, 34-4, 34-5, 34-6.

pro rata approach, noted that it had reaffirmed *Utica Mutual* in *Riley* and *Hanson*, and highlighted that federal courts "have treated *Utica Mutual* as settled law." *Jeffers*, 2020 WL 95667 at *8, *12. The ground for staying these cases based on *Robinson* and *Jeffers* is thus moot.

The question whether to grant a stay therefore turns on whether the issues before the Court of Appeals in the *Rossello* case are similar enough to those in these cases to warrant a stay until *Rossello* is resolved. Despite CXRe's attempts to distinguish *Rossello* in its briefing on Creditors' Motion to Stay, the Court agrees with Creditors that the issues in *Rossello* overlap substantially with those here. The petition for certiorari in the case, which Creditors have provided, explains that petitioner Patrick Rossello was diagnosed with malignant mesothelioma in 2013 after being exposed to asbestos while working in construction in 1974. ECF No. 35-2 at 10. Rossello obtained a judgment of over $2.6 million against his employer, Lloyd E. Mitchell, Inc. ("Mitchell"). *Id.* at 6. In a subsequent garnishment proceeding against Zurich American Insurance Company, Mitchell's insurer, the trial court applied the pro rata approach and determined that Zurich was only responsible for an amount proportional to the period between Rossello's exposure in 1974 and 1977, when it ceased to be Mitchell's insurer. *Id.* at 6–8.

The question presented in the certiorari petition is "Does Maryland law construe Zurich's 1974 insurance policies as promising to pay the judgment in full, contrary to the law of some other states?" *Id.* at 10. To the extent that that question is ambiguous about the scope of the issues before the Court of Appeals, the substance of the petition is not. The petition squarely identifies the all sums and pro rata approaches to allocation of liability in litigation over long-term injuries from toxic exposure. *Id.* at 12. It then states correctly that the Court of Appeals "has not spoken to the issue of allocation" despite the Court of Special Appeals' decisions in *Utica Mutual* and *Riley*, and contends that while the Fourth Circuit and this Court have applied *Utica*

*Mutual*'s approach, "allocation will remain a source of controversy and litigation" without a ruling by the Court of Appeals. *Id.* at 14. The petition thus seeks "a definitive ruling that will assist and guide Maryland's lower courts and federal courts in dealing with the on-going stream of cases involving the issue." *Id.* The petition's core contention is that the pro rata "allocation methodology . . . is fundamentally inconsistent with the law of Maryland." *Id.* Plainly, the petition asks the Court of Appeals to consider replacing the pro rata approach to indemnification liability in toxic exposure cases with the all sums approach. *See id.* at 16–20.

Which of those two approaches apply is a central dispute in the six consolidated cases currently before this Court, and CXRe's attempts to distinguish the issues in *Rossello* are unpersuasive. CXRe's primary argument in its Opposition to the Motion to Stay is that the policy language in *Rossello* does not limit coverage to occurrences during the policy period, as the policies do in these cases. ECF No. 40 at 11–12. As Creditors demonstrate, however, that argument is premised on a misreading of the policy in *Rossello* that ignores the presence of a similar temporal limitation, ECF No. 44 at 3–4. CXRe also argues that contrary to Creditors' argument in their Reply, there is a material distinction between policy language committing to pay "all sums" that the insured shall be obligated to pay, the language used in the *Rossello* policy, and the phrase "those sums," as in these cases. ECF No. 40 at 11–12. CXRe expands on this argument in the proposed surreply attached to its Motion for Leave, which the Court will grant because the Court of Appeals granted certiorari in *Rossello* after Creditors had filed their Motion to Stay and thus Creditors' arguments about *Rossello* were made for the first time in their Reply, ECF No. 44. *See Medish*, 272 F. Supp. 3d at 722. Nonetheless, the argument is unpersuasive. While the *Rossello* petition asks the Court of Appeals to overturn *Utica Mutual*, which interpreted a policy with "all sums" language, *Utica Mutual* has been applied in cases

11

involving "those sums" language as well as those concerning "all sums" language, at least by the Fourth Circuit. *See In re Wallace & Gale Co.*, 385 F.3d at 829; *Roberts*, 668 F.3d at 112).

The Court need not ruminate on the likelihood that the Court of Appeals will overturn the Court of Special Appeals' precedents and endorse the all sums approach. It is sufficient to conclude that the Court of Appeals is faced for the first time with a question that bears heavily on the core dispute in the six consolidated cases before this Court. *See Kendzior v. Gates*, No. ELH–12–2184, 2014 WL 773330, at *1 (D. Md. Feb. 24, 2014) (finding a stay warranted where a case pending before another court "will prove helpful to resolution of a central issue" in the case to be stayed). That determination directly informs two of the factors to consider in weighing motions to stay. *Hunt Valley Presbyterian Church*, 2018 WL 2225089, at *2. Judicial economy would not be served if this Court applies the pro rata method and the Court of Appeals then overturns *Utica Mutual* and endorses the all sums approach. In that circumstance, motions for reconsideration under Federal Rule of Civil Procedure 60 would be likely and, if granted, would require substantial relitigation of these cases that would be avoided if they were stayed now.

With respect to hardship for the moving parties without a stay, Creditors would be prejudiced by an adjudication of these cases premised on a rule of law that is abrogated shortly thereafter, and both Creditors and the insurers would have to expend significant resources should the cases be relitigated. As for prejudice to the nonmoving parties, CXRe gives little indication that it would suffer any beyond harm to its general interest in resolving these cases expeditiously. ECF No. 40 at 12. Liberty Mutual notes that post-judgment interest may continue to accrue against it during the period of the stay, but because it also claims that it is fully indemnified by CXRe, that concern is of little independent value. Finally, while the length of the stay is uncertain, the Court takes judicial notice of the record on the Court of Appeals' website that oral

argument in *Rossello* was held on November 5, 2019. *Cf. In re Mut. Funds Inv. Litig.*, No. MDL 1586, 2011 WL 3819608, at *1–*2. (D. Md. Aug 25, 2011) (granting a motion to stay where oral argument before the Fourth Circuit would be held in a related case less than one month later). Thus, while a stay here would be indefinite in length, it would not be inordinately lengthy. In light of these considerations, the Court will grant the Motion to Stay these cases pending the Maryland Court of Appeals' disposition of *Rossello.*

## IV. CONCLUSION

For the foregoing reasons, the Court will grant CXRe's Motion for Leave to File Surreply, ECF No. 47, and Judgment Creditors' Motion to Stay, ECF No. 34. A separate Order shall issue.

Date: <u>January 24, 2020</u>   /s/_____
GEORGE J. HAZEL
United States District Judge